UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ricky Martin,                                    Case No. 13-10420

                    Plaintiff,                   Sean F. Cox
v.                                               United States District Judge

Commissioner of Social Security,                 Michael Hluchaniuk
                                                 United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 17)</u>**

**I.    PROCEDURAL HISTORY**

      A.    <u>Proceedings in this Court</u>

      On February 1, 2013, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Sean F. Cox referred this matter to the undersigned for the purpose of reviewing

the Commissioner's decision denying plaintiff's claims for a period of disability,

disability insurance benefits, and supplemental security income.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 17).

Plaintiff also filed a reply in support of his motion for summary judgment.  (Dkt.

18).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on November 12, 2009 and November 20, 2009, alleging that he became disabled beginning March 15, 2009.  (Dkt. 9-2, Pg ID 49).  The claims were initially denied by the Commissioner on March 24, 2010.  (Dkt. 9-2, Pg ID 49).  Plaintiff requested a hearing and on August 1, 2011, plaintiff appeared with counsel via video teleconference before Administrative Law Judge (ALJ) Rebecca LaRiccia, who considered the case de novo.  In a decision dated September 23, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 49-58).  Plaintiff requested a review of this decision.  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on December 28, 2012, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 36-39); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 49 years old on the alleged disability onset date.  Plaintiff has

past relevant work as a machine operator and fryer at a bakery.  (Dkt. 9-2, Pg ID

56).  The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

the alleged onset date.  (Dkt. 9-2, Pg ID 51).  At step two, the ALJ found that

through the date last insured, plaintiff had the following severe impairments:

unspecified arthropathy, schizophrenia, bipolar disorder, and cocaine abuse.[2]

(Dkt. 9-2, Pg ID 51).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 9-2, Pg ID 51).  The ALJ concluded that plaintiff has the following residual

functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in

---

[2] The ALJ concluded that substance abuse was not an issue in this case and therefore, the ALJ did not need to conduct the substance abuse analysis required by 20 C.F.R. § 416.935(a) and plaintiff does assert any error in this regard.  (Dkt. 9-2, Pg ID 55) ("The claimant's past abuse of alcohol and cocaine is an issue but is not material as he claimed to have stopped using both and there is no evidence to the contrary.").

> 20 CFR 404.1567(b) and 416.967(b) except the claimant
> can occasionally climb ramps and stairs but no ladders,
> ropes or scaffolds. He can occasionally stoop, kneel,
> crouch and crawl. The claimant can understand,
> remember and carry out simple one or two step
> instruction [sic] and can adapt to simple changes in the
> work setting.  He is unable to use vibrating tools. The
> claimant can use his upper right extremity for fingering
> and handling frequently but not repetitive. He is not
> limited in the use of his left hand. He is capable of
> superficial contact with coworkers and supervisors.

(Dkt. 9-2, Pg ID 53).

At step four, the ALJ found that plaintiff could not perform his past relevant

work.  (Dkt. 9-2, Pg ID 56).  At step five, the ALJ concluded that there were a

significant number of jobs in the national economy that plaintiff could perform,

given his RFC.  Based on the foregoing, the ALJ concluded that plaintiff was not

under a disability from the claimed onset date through the date of the decision.

(Dkt. 9-2, Pg ID 57-58).

> B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ failed to consider the testimony of

plaintiff's case manager, Mr. Greenfield, who testified at the hearing.  Plaintiff

points out that the ALJ may use evidence of "other" sources to show the severity

of a claimant's impairments and how those impairments affect the claimant's

ability to work. 20 C.F.R. § 404.1513(d).  These "other" sources include

non-medical sources such as spouses, parents and other caregivers, siblings, other

relatives, friends, neighbors and clergy.  20 C.F.R. § 404.1513(d)(4).  Perceptible

weight must be given to lay testimony when "it is fully supported by the reports of

the treating physicians." *Lashley v. Secretary of Health and Human Services*, 708

F.2d 1048, 1054 (6th Cir. 1983); *see also Simons v. Barnhart*, 114 Fed.Appx. 727,

733 (6th Cir. 2004) ("[t]he testimony of lay witnesses, however, is entitled to

perceptible weight only if it is fully supported by the reports of the treating

physicians.").

Mr. Greenfield has known plaintiff since 2009 while seeing him twice a

month.  Mr. Greenfield testified that plaintiff has problems with hearing voices

and has difficulty concentrating to be able to do anything (Tr. 49) and that he

"does not come out of his house very often."  (Tr. 47-48).  Mr. Greenfield testified

that he sees plaintiff just staring at the television while not really knowing what is

going on as he has very little focus and has trouble completing tasks.  (Tr. 48).  He

has observed plaintiff's psychiatric problems as not getting any better despite the

psychiatric services he is receiving.  (Tr. 48).  According to plaintiff, all this

information was ignored by the ALJ.  Plaintiff points to *Koslinski v. Comm'r of*

*Soc. Sec.*, 2013 WL 1305326 (W.D. Mich. 2013), in which the ALJ did not

mention any of the lay witness testimony.  Since the court could not determine

whether the ALJ committed error in failing to give weight to these witnesses, the

case was remanded so the Commissioner could evaluate the testimony of the lay

witnesses on remand.

Next, plaintiff contends that the ALJ's decision is not clear as to how *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) is being applied. (Tr. 19). The ALJ states that there is "very little evidence that would significantly change the claimant's physical impairment and his physical ability to function." (Tr. 19). However, according to plaintiff, there are clearly issues that show a worsening of his condition. The previous ALJ decision from 2006 indicates that plaintiff has a right wrist impairment with no psychiatric impairments. (Tr. 67). In the current case, plaintiff suffers from bilateral hand and right ankle issues, as documented by the Center for Family Health. (Tr. 328). Additionally, plaintiff did not have a psychiatric issue in his previous case. Clearly, plaintiff has presented new material evidence concerning the period after the last ALJ decision of January 13, 2006. Plaintiff contends, however, that the ALJ has not acknowledged the presence of medical evidence since the last ALJ decision while disregarding the reports and testimony of plaintiff's therapist and treating doctor when applying *Drummond*. Plaintiff maintains that the ALJ's conclusion that new and material evidence of disability postdating the original decision did not exist is not supported by psychological treating sources reported observing disability level symptoms after the original ALJ decision. Rather, the present record shows that plaintiff sought and received regular psychological

treatment.  Additionally, plaintiff has additional orthopedic problems regarding his left extremity, which was not part of the original ALI decision.

According to plaintiff, the ALJ's most significant error is the finding that the opinion and report of Kim Greenfield, case manager and treating therapist, that is counter signed by Dr. MacAuley, treating psychiatrist, is given "little weight." (Tr. 368-369).  The ALJ states that the report itself is internally inconsistent because Ms. Greenfield notes numerous marked limitations that would make working or living everyday life nearly impossible yet there is a GAF of 55, suggesting only moderate symptoms.  Furthermore, according to the ALJ, the treatment notes authored by Dr. MacAuley strongly suggest a higher level of functioning ability than that alluded to in Ms. Greenfield's report.  (Tr. 21). Plaintiff contends that the ALJ's analysis is factually incorrect.  According to plaintiff, because Dr. MacAuley counter-signed the report, it is not just Mr. Greenfield's report.  Further, plaintiff asserts that to use a GAF of 55 to impeach the report and limitations contained therein is improper.  Additionally, plaintiff maintains that the treatment notes by Dr. MacAuley do not suggest a higher level of functioning ability.  Thus, plaintiff contends that the ALJ failed to provide "clear and convincing" reasons for rejecting the opinion and assessment of plaintiff's treating physician who has opined that he is totally disabled and unable to work.

Report and Recommendation
Cross-Motions for Summary Judgment
*Martin v. Comm'r*; Case No. 13-10420

The ALJ also found plaintiff not credible, but in doing so has mischaracterized the record, according to plaintiff. (Tr. 15). The ALJ states that plaintiff stated he cannot read and write but reported the exact opposite in a report at Exhibit 8E, p. l (which is Tr. 226). Plaintiff points out that this report is a computer generated report and it is not clear whether plaintiff actually answered this question. In fact, plaintiff testified that this report was an error and that he never finished high school. (Tr. 33). Further, the therapist testimony, which was altogether ignored by the ALJ, indicated that plaintiff needed help with all his forms as he was not able to complete or read any of the forms. (Tr. 49). Additionally, plaintiff says that it is disingenuous for the ALJ to use a barely legible junior high school report from 1975 (Tr. 337), which states that plaintiff was getting a "B" in reading and that this information is inconsistent with an inability to read. (Tr. 20). The grade, which was a B- not a B, reflects his effort in special education at an alternative school. The ALJ also argues that plaintiff can read because he has a driver's license. However, just because plaintiff has a driver's license, does not mean that plaintiff can read. According to plaintiff, the ALJ purposely never asked plaintiff if he took the driver's license test orally. (Tr. 41). Had the ALJ asked that question, she would have learned that plaintiff took his driver's license test orally because he cannot read. There is overwhelming evidence in the record that plaintiff is, in fact, illiterate. He has stated several

times he cannot read and write. And, his therapist explained how he had to read all the Social Security forms to him and write down his answers.

Plaintiff contends that the ALJ's credibility finding is flawed to the extent it ignores SSR 96-7p and 20 C.F.R. § 404.1529. According to plaintiff, the ALJ mischaracterizes the records in order to "berate" plaintiff's credibility by stating "the claimant testified that he has only mild limitations with his activities of daily living." (Tr. 20). However, the ALJ does not state what testimony supports her statement. If anything, plaintiff testified that he cannot be around other people and has difficulty making friends while staying in his room. (Tr. 38-39). Plaintiff also testified that he does not cook, do the laundry or grocery shop. (Tr. 40). Even watching sports on television is limited, unlike the description provided by the ALJ. He watches basketball and football but only if there is some sort of "action involved", inferring that it is hard for him to concentrate on watching television. According to plaintiff, the ALJ even mischaracterizes plaintiff's racing thoughts and auditory hallucinations by stating "[I]n some instances the claimant, when medicated is described as 'feeling fine' and 'pleasant'" while citing exhibit 8F, p. 5 or Tr. 20. However, this progress note was from April 2010. According to plaintiff, the ALJ took this progress note out of context as every other progress note from Lifeways after April 2010 notes significant problems. On August 13, 2010, plaintiff was noted to be depressed, sleeping poorly and occasionally

hearing voices to kill himself. (Tr. 318). On November 5, 2010, Lifeways noted

that he has increased anxiety, depression and had poor concentration. (Tr. 316).

A follow-up appointment on January 13, 2011 noted that he had bipolar disorder

with depression. (Tr. 337). Plaintiff was reported to have racing thoughts, a hard

time sleeping a night, difficulty socializing, paranoia around people and issues

with isolating himself in his apartment. *Id*. On April 4, 2011, plaintiff was noted

to have bipolar with depression, paranoia and auditory hallucinations. (Tr. 342).

Plaintiff contends that the ALJ violated SSR 96-8p in not considering the

effect of his mental impairments including his marked limitation in the ability to

maintain attention and concentration for extended periods of time or marked

limitations to complete a normal workday and work week without interruptions

from psychologically based symptoms and to perform at a consistent pace without

a unreasonable number and length of rest periods. SSR 96-8p requires considering

the impact of both severe and non-severe impairments on the ability to work. In

assessing plaintiff's impairments and the effects thereof, the adjudicator must

consider limitations and restrictions imposed by all of the individual's

impairments, even those that are not "severe." Plaintiff argues that the ALJ erred

in failing to fully consider all of his impairments. In determining the RFC, the

ALJ must consider the combined effects of all impairments. 42 U.S.C. § 423(d)(2)

(B); 20 C.F.R. §§ 416.920(c), 416.945(a), (e); SSR 96-8. The ALJ's hypothetical

questions should reasonably incorporate the disabilities of plaintiff.  In this case, the hypothetical question posed to the vocational expert failed to address problems with maintaining attention and concentration for extended periods of time or a marked limitations to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without a unreasonable number and length of rest periods.  As such, plaintiff contends that the ALJ's hypothetical question is flawed because the hypothetical question assumed that plaintiff could work eight hours a day, five days a week and that there is nothing in the hypothetical question to suggest impairments of occasional bilateral use of the hands for fingering and handling, a marked limitation in the ability to maintain attention and concentration for extended periods of time or a marked limitations to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without a unreasonable number and length of rest periods. The VE responded that such factors would be work preclusive and there would be no jobs that the individual would be able to perform.  (Tr. 53).

    C.      The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ properly followed *Drummond* in evaluating plaintiff's impairments.  In the instant case, the ALJ fully complied with the precedent the Sixth Circuit recognized in *Drummond* when she

acknowledged that plaintiff was barred from re-litigating the RFC determination from the Commissioner's 2006 decision on his prior benefits application absent new and material evidence of a change in his condition. (Tr. 19). According to the Commissioner, the ALJ then assessed the new and material evidence regarding plaintiff's condition and incorporated additional limitations based on this evidence. (Tr. 19-21). Specifically, in addition to plaintiff's prior RFC restrictions (Tr. 67), the ALJ restricted plaintiff to frequent fingering and handling because the evidence demonstrated a reduced ability to use his right hand. (Tr. 18-19). Additionally, the ALJ determined based on the new and material evidence regarding plaintiff's mental condition that plaintiff was newly limited to understanding, remembering, and carrying out only simple one- or two-step instructions, adapting to only simple changes in work setting, and having only superficial contact with co-workers and supervisors. (Tr. 18-21). According to the Commissioner, plaintiff ignores the ALJ's decision when he asserts that the ALJ misapplied *Drummond*. While plaintiff notes that he presented evidence concerning the period after January 2006, he neglects to mention that the ALJ fully considered and credited all of the evidence that he cites, *see* Tr. 19 (finding that plaintiff's complaints of atrophy in his hands and feet reduced his ability to use his right hand), 19-21 (assessing the new mental health evidence), and incorporated numerous additional RFC limitations beyond those in the prior 2006

Report and Recommendation
Cross-Motions for Summary Judgment
*Martin v. Comm'r*; Case No. 13-10420

decision.  (Tr. 18, 67).  The Commissioner maintains, therefore, that the ALJ

clearly explained how she accounted for plaintiff's new and material evidence

with additional RFC limitations, and plaintiff's contention that the ALJ misapplied

*Drummond* is wholly without merit.

The Commissioner also argues that substantial evidence supports the ALJ's

assessment of plaintiff's mental RFC.  In addition to properly complying with the

Sixth Circuit's precedent in *Drummond* and deferring to the prior disability

determination, the ALJ cited substantial evidence and reasonably relied on the

state agency physicians' opinions to support her assessment of plaintiff's

additional limitations based on the new and material evidence.  (Tr. 18-21).

According to the Commissioner, she fully considered the opinion of plaintiff's

case worker, Mr. Greenfield, and reasonably discounted that opinion as internally

inconsistent, inconsistent with Dr. MacAuley's treatment notes, and inconsistent

with the opinions of the state agency reviewing physicians.  (Tr. 21).  The ALJ

also reasonably found plaintiff's allegations of greater limitations not credible

because they were internally inconsistent, unsupported by and inconsistent with

record evidence, and inconsistent with plaintiff's daily activities. (Tr. 20). The

Commissioner contends that plaintiff's subjective disagreement with the ALJ's

assessment of the evidence is not a permissible basis for reversing the ALJ's

decision.  *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir.

1987) ("[c]laimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings"); *Bass*, 499 F.3d at 509 (ALJ's decision must be affirmed even if reasonable minds could disagree on whether claimant is disabled). Because substantial evidence supports the ALJ's decision, this Court should affirm it. *Bass*, 499 F.3d at 509.

As to plaintiff's physical impairments, the ALJ largely deferred to the prior disability determination, as required by *Drummond* and reasonably determined, based on Dr. Holmes's RFC assessment, that plaintiff's reduced ability to use his right hand limited him to only frequent fingering and handling with that hand. (Tr. 18-19, 21, 271). Dr. Holmes concluded that plaintiff was restricted to frequent fingering and handling with his right hand based on Dr. Sachdev's consultative examination. (Tr. 273, 284). The ALJ also acknowledged that plaintiff had sought treatment with Ms. Ludwig for chronic arthropathy, and concluded that this supported a reduction in plaintiff's ability to use his right hand. (Tr. 19, 328). The ALJ then concluded that no other evidence undermined the original ALJ determination. (Tr. 19, 67). Without citing any supporting evidence, plaintiff claims that he has new "orthopedic problems regarding his left extremity." (Pl. Br. 12). In his argument section, the only physical impairment evidence plaintiff cites is Ms. Ludwig's report that plaintiff complained of pain in his hands and ankles.

Report and Recommendation
Cross-Motions for Summary Judgment
*Martin v. Comm'r*; Case No. 13-10420

(Pl. Br. 11, Tr. 328). According to the Commissioner, plaintiff ignores the fact that the ALJ discussed this evidence (Tr. 19) and fails to identify any medical evidence assessing additional functional limitations based on these complaints. In contrast to plaintiff's unsupported argument, the Commissioner points out that the ALJ relied on Dr. Holmes's functional capacity assessment, which assessed specific limitations based on plaintiff's documented physical impairments. As the regulations recognize, state agency reviewing physicians, such as Dr. Holmes, are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). Moreover, the Commissioner contends that plaintiff cannot rely on Ms. Ludwig to document the existence of any impairment because Ms. Ludwig, a nurse practitioner, is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment") & (d)(1) (nurse practitioners are "other sources," not acceptable medical sources). In sum, the Commissioner maintains that the ALJ reasonably relied on the only record physical RFC assessment in determining that plaintiff's only additional physical limitation was a restriction to frequent fingering and handling with his right hand.

According to the Commissioner, the ALJ also reasonably relied on the opinions of Drs. Tsai and Harley in determining that, despite his mental

impairments, plaintiff retained the ability to "understand, remember and carry out simple one or two-step instruction[s]," "adapt to simple changes in the work setting," and have "superficial contact with coworkers and supervisors." (Tr. 18, 21). The ALJ's assessment of plaintiff's limitations in the four functional areas (Tr. 17), as well as her determination that plaintiff retained the ability to understand, carry out, and remember simple one or two step instructions and deal with simple changes in the work setting (Tr. 18), were essentially identical to Dr. Tsai's opinion. (Tr. 266, 280). Her determination that plaintiff retained the ability to have superficial contact with co-workers and supervisors was encompassed in Dr. Tsai's finding that plaintiff could respond appropriately to supervision and co-workers. (Tr. 18, 266). The ALJ's RFC determination was also consistent with Dr. Harley's conclusion that plaintiff retained the ability to perform unskilled work-related tasks. (Tr. 18, 311).

Apart from crediting the opinions of Drs. Tsai and Harley (Tr. 21), the ALJ also noted that the evidence regarding plaintiff's illiteracy was inconsistent and that plaintiff could perform chores (Tr. 40), watch sports on television (Tr. 41), and have coffee in a homeless shelter (Tr. 40). (Tr. 20). The ALJ acknowledged that plaintiff avoided shopping because he wanted to avoid interacting with others, and that he testified he had trouble concentrating when watching television. (Tr. 20, 40-41). However, she noted that Dr. MacAuley had encouraged plaintiff to

16

volunteer and interact with others.  (Tr. 20, 337).  The ALJ concluded that there was no strong evidence to corroborate "frequent or regular" auditory hallucinations (*see e.g*, Tr. 283), and that Dr. Rehman and Dr. Curtis both noted that plaintiff obtained relief for his mental impairments with medication.  (Tr. 20, 318-19).

The ALJ also considered and gave little weight to Mr. Greenfield's opinion. (Tr. 21).  As an initial matter, although the ALJ correctly attributed the opinion to Mr. Greenfield, who signed the form as the "[p]reparer" (see Tr. 369), she incorrectly stated that the opinion had been "countersigned by Dr. MacAuley."  In fact, according to the Commissioner, the opinion contains no signature from Dr. MacAuley, though it lists "Dr. McAuley" in the space following "Printed Name of Psychiatrist/Psychologist."  (Tr. 369).  "Dr. McAuley" appears to be written in the same handwriting as the rest of Mr. Greenfield's assessment (*see* Tr. 368-69). Moreover, the Commissioner asserts that the fact that Dr. MacAuley's name is misspelled and written vastly different from her signature elsewhere in the record (compare Tr. 317 with Tr. 369) strongly indicates that Dr. MacAuley did not endorse Mr. Greenfield's opinion.  As such, contrary to plaintiff's contention, the ALJ was not required to analyze Mr. Greenfield's opinion as if it were the opinion of treating source Dr. MacAuley.  Even assuming arguendo that Mr. Greenfield's opinion could be attributed to Dr. MacAuley, the Commissioner maintains that it

would not be entitled to controlling weight because it was inconsistent with substantial evidence in the case record.  Here, Mr. Greenfield's opined limitations are plainly inconsistent with the opinions of Drs. Tsai and Harley.  (*See* Tr. 266, 280, 311, 368-69).  This evidence is adequate to support a conclusion that is contrary to the conclusion Mr. Greenfield expressed in his assessment.  *See* SSR 96-2p, 1996 WL 374188 at *3.

Furthermore, the ALJ properly discounted Mr. Greenfield's opinion because it was internally inconsistent, contrary to Dr. MacAuley's treatment notes, and contrary to the opinions of Drs. Tsai and Harley. (Tr. 21).  An ALJ must consider the opinions of treating physicians that are not entitled to controlling weight, as well as opinions from "other sources" such as Mr. Greenfield, under the factors in 20 C.F.R. § 404.1527(d); SSR 06-03p, 2006 WL 2329939 at *2-3.  These factors include the length, frequency, nature, and extent of the treatment relationship; the extent to which the source presents relevant evidence to support the opinion; the consistency of the opinion with the record as a whole; whether the opinion is within the specialty of the medical source; and other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2)-(6).  Here, the ALJ noted that Mr. Greenfield's identification of numerous marked limitations (Tr. 368) was inconsistent with his assessment that plaintiff had a GAF score of 55 (Tr. 369), indicating only moderate symptoms.  *See* DSM-IV-TR.  This inconsistency goes to

a lack of "supportability" for the opinion.  *See* 20 C.F.R. § 404.1527(d)(3).  The ALJ also found Mr. Greenfield's limitations inconsistent with Dr. MacAuley's urging plaintiff to increase his socializing.  (Tr. 20-21, 337).  According to the Commissioner, this implicates the "supportability" and "consistency" factors of the regulation.  *See* 20 C.F.R. § 404.1527(d)(3) & (4).  Finally, again corresponding to the "consistency" factor of the relevant regulation, the ALJ credited the inconsistent opinions of Drs. Tsai and Harley, who, unlike Mr. Greenfield, are acceptable medical sources and experts in disability evaluation.  (Tr. 21, 266, 280, 311, 368-69); 20 C.F.R. § 404.1527(d)(4) & (f)(2)(i).

Finally, plaintiff contends that the ALJ improperly disregarded Mr. Greenfield's lay testimony.  However, he ignores the fact that the ALJ expressly considered Mr. Greenfield's RFC opinion (*see* Tr. 21), which was more specific that his testimony.  (*See* Tr. 46-49, 368-69).  In *Burke v. Comm'r of Soc. Sec.*, 2012 WL 512620 (W.D. Mich. 2012), the ALJ referred to the third party function report of the claimant's live-in girlfriend but not her testimony.  *Burke*, 2012 WL 512620 at *10.  Relying on *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507-08 (6th Cir. 2006), the Burke court noted that it was unnecessary for the ALJ to address every piece of evidence, and rejected the argument that the ALJ ignored his girlfriend's opinion.  *Burke*, 2012 WL 512620 at *10.  Given that the ALJ explicitly discussed Mr. Greenfield's detailed RFC opinion, the Commissioner

argues that it can hardly be said that she failed to consider Mr. Greenfield's opinion. (*See* Tr. 21, 368-69). In contrast to *Burke*, plaintiff cites a decision from the Western District of Michigan that contains no indication that the ALJ considered the opinions of the lay witnesses apart from their testimony. *See Kolinski v. Comm'r of Soc. Sec.*, 2013 WL 1305326 (W.D. Mich. 2013). Finally, as plaintiff acknowledges (Pl. Br. 10), the testimony of lay witnesses is entitled to perceptible weight only if it is fully supported by the reports of treating physicians. *See Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004). The Commissioner points out that Dr. MacAuley did not endorse Mr. Greenfield's RFC opinion.

Finally, the Commissioner asserts that the ALJ reasonably found that plaintiff's allegations of greater limitations than those she included in her assessment of plaintiff's RFC were not credible because they were internally inconsistent, inconsistent with plaintiff's daily activities, and unsupported by and inconsistent with record evidence. (Tr. 20). According to the Commissioner, the ALJ considered proper factors in assessing plaintiff's credibility, and the ALJ's assessment is entitled to deference. First, the ALJ accurately recounted that plaintiff's allegations regarding his ability to read and write contained numerous inconsistencies. (Tr. 20). Specifically, the ALJ found it suspicious that plaintiff did not claim illiteracy in either of the prior disability applications that are part of

the record.  (Tr. 20, 57-68, 226).  In fact, as the ALJ noted (Tr. 20), plaintiff

specifically indicated that he could read and write English in the May 2006 adult

disability report.  (Tr. 226).  The ALJ further noted that plaintiff's allegation of

illiteracy was inconsistent with his school record, which documented that he

received a grade of "B-" in reading (Tr. 339), and that plaintiff was able to obtain

his driver's license in spite of alleged difficulties reading or writing (Tr. 41). (Tr.

20).  The Commissioner also argues that ALJ reasonably found only mild

limitations in plaintiff's activities of daily living.  The ALJ otherwise concluded

that the medical evidence suggested a higher level of function than Plaintiff

alleged and supported the ALJ's RFC determination.  (Tr. 20-21).  Because the

ALJ reasonably found that plaintiff's allegations were internally inconsistent,

inconsistent with his daily activities, and unsupported by objective medical

evidence, the Commissioner asks the Court to defer to the ALJ's credibility

assessment.  According to the Commissioner, plaintiff makes numerous

perfunctory and unsupported allegations in challenging the ALJ's credibility

assessment, while acknowledging the inconsistencies in the record regarding his

ability to read and write English, and providing no support for his assertion that it

was improper for the ALJ to highlight those significant inconsistencies.  Because

plaintiff provides no basis for his contention that it was "disingenuous" for the

ALJ to cite his school records or that the ALJ "purposely never asked [him] if he

took the driver's license test orally," those arguments should be deemed waived.

*See Benge*, 474 F.3d at 245 (issues raised in a perfunctory manner without any

developed argumentation are waived).  According to the Commissioner, plaintiff's

other arguments amount to a disagreement with the ALJ's assessment of the

evidence, and do not justify reversing the ALJ's decision.  *See Mullins*, 836 F.2d

at 984.  Because substantial evidence supports the ALJ's RFC assessment, the

Commissioner contends that this Court should affirm it.  *See Bass*, 499 F.3d at

509.

   The Commissioner points out that plaintiff's argument that the ALJ erred in

relying on VE testimony because the hypothetical to the VE did not incorporate all

of his limitations is wholly predicated on his contention that the ALJ erroneously

assessed his RFC.  According to the Commissioner, plaintiff has not demonstrated

that substantial evidence did not support the ALJ's RFC determination.  The ALJ

was responsible for determining plaintiff's RFC and framing hypothetical

questions to the VE that incorporated only the limitations assessed in that RFC.

*Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Because the

ALJ's hypothetical accurately incorporated her determination regarding Plaintiff's

limitations, the Commissioner asserts that the ALJ was entitled to rely on the VE's

testimony. *Id*.; *see Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (VE's

testimony in response to accurate hypothetical question constitutes substantial

evidence); (Tr. 18, 51-52).

      D.    <u>Plaintiff's Reply</u>

In his reply, plaintiff insists that the ALJ misapplied *Drummond*. According to plaintiff, the ALJ's decision is not clear as to how Drummond is being applied as she states that there is "very little" evidence that would significantly change the claimant's ability to function. (Tr. 19). According to plaintiff, the Commissioner recites a page of "*Drummond* law" which really has nothing to do with the case at hand. Plaintiff says he is well aware of the principle of res judicata and the bar of re-litigating the "same case." Plaintiff contends, however, that *Drummond* does not apply in this case as plaintiff did not have any psychiatric impairment in his previous case when said impairment is the primary focus in the present case. (Tr. 67). Additionally, plaintiff suffers from left hand and right ankle osteoarthritis, as documented by the Center for Family Health, which were not part of the previous ALJ decision. (Tr. 252 & 254). In this case, "new and material" evidence logically establishes that his condition worsened during the new time period as he did not even have certain severe impairments in the previous ALI decision. Plaintiff says that while the ALJ was correct in addressing *Drummond*, her conclusion that new and material evidence of a disability postdating the original decision did not exist is not supported by substantial evidence.

First, almost all of plaintiff's psychological treating sources reported

observing disability level symptoms and otherwise serious symptoms of psychological limitations. (Tr. 3342, 345 & 352). Hope Network, a long-term provider, found that plaintiff's psychological problems rendered him unable to perform any job. (Tr. 358 & 361 ). Mr. Greenfield, who treated plaintiff on a regular basis under the supervision of doctors, found him unable to work while the ALJ ignored his testimony. (Tr. 49). The ALJ rejected all of the doctor's opinions on the basis that their findings were not supported by treating notes. (Tr. 19). However, the ALJ's reasons for according "little weight" to all of the treating opinions stands at odds with the treating notes indicating that he has schizophrenia and an inability to work.

While the Commissioner argues that the ALJ reasonably relied on the opinions of Drs. Tsai and Harley to assess plaintiff's mental limitations the Commissioner failed to mention that they are non-examining doctors. As such, a non-examining physician's opinion is entitled to less weight than the opinions of reports of physicians who had examined the applicant over a period of time.

Plaintiff contends that the ALJ improperly disregarded testimony by Plaintiff's case manager and therapist on the basis that the he did not possess the qualifications to make a disability opinion. Nowhere in her decision does the ALJ even mention that Mr. Greenfield offered detailed testimony as to his observations of plaintiff's mental functioning. Mr. Greenfield's finding that plaintiff was

24

disabled was supported by the opinions of treating sources and was thus entitled to "perceptible weight." Mr. Greenfield's statement that he had counseled plaintiff is particularly relevant to his disability claim due to the close relationship he had developed with plaintiff and the fact that he had been treating plaintiff since 2009. Contrary to the Commissioner's assertions, plaintiff argues that Mr. Greenfield's opinion is very consistent with the treating psychiatrists in the case. Hope Network diagnosed plaintiff with paranoid schizophrenia and a GAF score of 50 (Tr. 352) and it was noted that plaintiff's symptoms were depression, anxiety, hearing voices and poor sleep. (Tr. 358). The doctor also recommended that plaintiff pursue Social Security benefits as he did not fathom plaintiff being able to work and that he "is unable to manage a job." (Tr. 358 & 361).

Plaintiff also contends that the ALJ had no basis to discount plaintiff's credibility as the medical evidence is consistent with his testimony. According to plaintiff, the Commissioner never really addresses this issue. Instead, he cites boilerplate Sixth Circuit language as to what credibility means. Plaintiff asserts, however, that the ALJ's analysis of plaintiff's credibility is not supported by substantial evidence in the record because not only is the analysis cherry picked but it altogether ignores significant diagnoses and findings. Plaintiff contends that the ALJ inaccurately summarized the evidence and did not articulate her reasoning enough to satisfy the requirements of the regulations, case law, and SSR 96-7p.

By regulation, the ALJ is required to consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources, as was done here.  Instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, the ALJ cherry picked select portions of the medical record or wrongly claimed plaintiff alleged certain severe impairments, to discredit him.

According to plaintiff, the hypothetical question on which the ALJ relied did not comprehensively describe plaintiff's limitations because it failed to set forth the effect of plaintiff's mental impairments, including his marked limitation in the ability to maintain attention and concentration for extended periods of time or marked limitations to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without a unreasonable number and length of rest periods.  To meet its burden of proof for the fifth factor in disability case, the ALJ must accurately portray a claimant's individual physical and mental impairments.  According to plaintiff, the ALJ gave the vocational expert an improper hypothetical by failing to account for these issues.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusion

1.     *Drummond*/res judicata

Generally, principles of *res judicata* require that the administration be

bound by a prior decision unless a change of circumstances is proven on a

subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842

(6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security

claimants and the Commissioner are barred from re-litigating issues that have

previously been determined at the administrative level. *Drummond*, 126 F.3d at

842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner

of Social Security after a hearing shall be binding on all individuals who were

parties to such hearing."). *Drummond* mandates that absent evidence that a

claimant's condition has improved, findings issued by an ALJ as part of a prior

disability determination are binding on an ALJ in a subsequent proceeding.

*Drummond*, 126 F.3d at 841. The Commissioner bears the burden to prove

changed circumstances so as to escape being bound by the principles of *res*

*judicata*. *Id*. at 842-43 ("We reject the Commissioner's contention that the Social

Security Administration has unfettered discretion to reexamine issues previously

determined absent new and additional evidence .... Just as a social security

claimant is barred from relitigating an issue that has been previously determined,

so is the Commissioner."). Acquiescence Ruling 98-4(6), issued post-*Drummond*,

instructs that the agency "must adopt [the residual functional capacity finding]

from a final decision by an ALJ or the Appeals Council on the prior claim in

determining whether the claimant is disabled with respect to the unadjudicated

period unless there is new and material evidence relating to such a finding...."  The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."  *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

To the extent any confusion may exist regarding the applicable standard, *Drummond* trumps the acquiescence ruling.  *Harris v. Astrue*, 2010 WL 3909495 (S.D. Ohio 2010), *adopted by* 2010 WL 3909493 (S.D. Ohio 2010).  As the *Harris* court pointed out, the "Commissioner's Acquiescence Rulings-like the Commissioner's Regulations-are not the supreme law of the land. 'It is, emphatically, the province and duty of the judicial department, to say what the law is,' *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137 (1803), ['] and the [Commissioner] will ignore that principle at [her] peril.'"  *Harris*, at *5, quoting *Hutchison for Hutchison v. Chater*, 99 F.3d 286, 287-88 (8th Cir. 1996) (other citations omitted) (brackets in *Hutchison*).  *Harris* questions whether AR 98-4(6) is consistent with *Drummond* because the Ruling does not use the phrase "improvement in a claimant's condition" when instructing ALJs how to apply *Drummond*.  Rather, it allows ALJs to use "new and material evidence relating to such a [prior] finding ..." to avoid administrative *res judicata* without considering whether such evidence also shows improvement in a claimant's condition.  *Harris*,

at *5.  According to *Harris*, "[t]his leaves an ALJ free to overlook the Commissioner's burden, under *Drummond*, to point to evidence of improvement in a claimant's condition."  *Id.*, citing *Drummond*, 126 F.3d at 841-42.

In this case, plaintiff asserts that the ALJ improperly or unclearly applied *Drummond*.  The undersigned disagrees.  The ALJ specifically concluded that there was very little evidence to suggest a different *physical* RFC and nothing to suggest the need to alternate between sitting and standing every 15 minutes as alleged by plaintiff.  (Dkt. 9-2, Pg ID 54).  Even plaintiff admits that his new impairments that have occurred since the last ALJ's decision are "primarily mental."  Indeed, the vast majority of plaintiff's claims of error have nothing to do with his physical impairments.  With regard to *Drummond*, the undersigned finds no error with the ALJ's analysis relating to plaintiff's physical impairments.

As to plaintiff's mental impairments, the ALJ specifically found that, with the introduction of new mental health treatment, there was a reduction in plaintiff's mental demands added to the RFC based on the objective medical evidence of record.  (Dkt. 9-2, Pg ID 54).  In the view of the undersigned, the ALJ plainly considered the new evidence pertaining to plaintiff's mental impairments and found that plaintiff's RFC needed to be updated accordingly.  Simply because plaintiff disagrees with the ultimate conclusion reached by the ALJ (which is a separate issue to be discussed below), does not mean that the ALJ did not conduct

a proper *Drummond* analysis. Thus, in the view of the undersigned, plaintiff's first claim of error should be rejected.

### 2.      Mental impairments

Plaintiff first argues that the ALJ failed to consider, or even mention, that his therapist and case manager, Mr. Greenfield, testified at the hearing. The undersigned agrees with the Commissioner that the ALJ extensively considered evidence, treatment records, and the opinions of Mr. Greenfield throughout her opinion. In addition, on review of Mr. Greenfield's testimony, there is nothing new or different from the other records considered by the ALJ. To the extent it may have been an error for the ALJ to fail to mention this testimony, such an error was, at worst, harmless in light of the ALJ's extensive consideration of Mr. Greenfield's treatment records and opinions.

Plaintiff's biggest complaint is the ALJ's treatment of Mr. Greenfield's opinions and the failure to give those opinions controlling weight. Several courts have concluded that where a licensed social worker or other unacceptable medical source is working as part of a treatment team and an acceptable medical source has "signed off" on the opinions, they should be evaluated as a treating physician opinion, but that does not appear to be the case here. *See e.g.*, *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996) (non- medical source must be integral to team, and the acceptable medical source must undersign her findings); *Keith v.*

*Astrue*, 553 F.Supp.2d 291, 301 (W.D.N.Y. 2008) (ALJ erred and remand required where the ALJ discounted the reports and notes signed by a psychiatrist because they were primarily prepared by a social worker); *Wethington v. Astrue*, 2009 WL 2485395 (W.D. Ky. 2009) (Social worker's records were signed by treating psychiatrist, who would be an "acceptable medical source" and whose opinion may be entitled to controlling weight under the treating physician rule.).  The Commissioner points out that Dr. MacAuley did not sign Mr. Greenfield's opinion and while her name is written on the report in the space for "treating psychiatrist," it appears to be in the same handwriting as the remainder of the report, which was prepared by Mr. Greenfield.  The undersigned agrees that there is no other evidence in the record suggesting that Mr. Greenfield's opinions have been adopted by Dr. MacAuley and, therefore, are not entitled to controlling weight. Thus, the ALJ was only required to consider the opinion of Mr. Greenfield, but was not required to give it controlling or substantial weight.

In addition, the ALJ properly found that Mr. Greenfield's opinion was internally inconsistent and inconsistent with Dr. MacAuley's reports.  For example, Mr. Greenfield concluded that plaintiff was markedly limited in his ability to understand and remember one or two step instructions, but only moderately limited to carry out one or two step instructions.  In addition, as the ALJ noted, the extreme limitations noted by Mr. Greenfield are inconsistent with a

GAF of 55.  In addition, Dr. MacAuley encouraged plaintiff to increase his socializing through volunteering and with neighbors.  While Dr. MacAuley's reports document plaintiff's difficulty sleeping, difficulty socializing, and paranoia, they do not show the level of impairment suggested in Mr. Greenfield's opinions.  In addition, Mr. Greenfield's opinion was contradicted by two expert social security disability consultants.  Given the lack of a controlling treating physician opinion in the record, and the other problems identified with Mr. Greenfield's opinions, the ALJ was entitled to give more weight to the consulting opinions.

### 3.    Credibility

The undersigned also agrees with the Commissioner that the ALJ considered proper factors in assessing plaintiff's credibility, and the ALJ's assessment is entitled to deference.  While plaintiff contends that he cannot read or write, the ALJ recounted that plaintiff's allegations regarding his ability to read and write contained numerous inconsistencies.  (Tr. 20).  For example, the ALJ found it suspicious that plaintiff did not claim illiteracy in either of the prior disability applications that are part of the record.  (Tr. 20, 57-68, 226).  In fact, as the ALJ noted (Tr. 20), plaintiff specifically indicated that he could read and write English in the May 2006 adult disability report.  (Tr. 226).  The ALJ further noted that plaintiff's allegation of illiteracy was inconsistent with his school record,

which documented that he received a grade of "B-" in reading (Tr. 339), and that plaintiff was able to obtain his driver's license in spite of alleged difficulties reading or writing (Tr. 41). (Tr. 20).  While there were contrary indications in the record that supported plaintiff's claim that he could not read or write, the ALJ's credibility determination is entitled to substantial deference; and here, the ALJ has cited substantial evidence to support his conclusion that plaintiff's illiteracy claim was not entirely credible.

The undersigned also agrees with the Commissioner that the ALJ reasonably found only mild limitations in plaintiff's activities of daily living because the medical evidence suggested a higher level of function than Plaintiff alleged and supported the ALJ's RFC determination.  Because the ALJ reasonably found that plaintiff's allegations were internally inconsistent, inconsistent with his daily activities, and unsupported by objective medical evidence, the undersigned suggests that the Court should defer to the ALJ's credibility assessment.

4.    Hypothetical Questions/Vocational Expert Testimony

Plaintiff's arguments in this regard are the same as his complaints with the ALJ's RFC finding and need not be considered further, given that they were rejected above.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the

Report and Recommendation
Cross-Motions for Summary Judgment
*Martin v. Comm'r*; Case No. 13-10420

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 17, 2014             s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 17, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kerry J. Spencer, Lynn Marie Dodge, Allen Duarte, Marc Boxerman.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Martin v. Comm'r*; Case No. 13-10420